IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **ANALYTICAL TECHNOLOGIES, LLC**, | ) ) ) |
| Plaintiff, | ) Civil Action No. 2:24-cv-00308 ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| **ROARK CAPITAL, INC., DBA SUBWAY,** | ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Analytical Technologies, LLC (hereinafter "ATL"), by and through its undersigned attorneys, files this Complaint for Patent Infringement against Defendant Roark Capital, Inc., that through its investment funds controls and does business as Subway, Dunkin', Baskin-Robbins, Sonic, Arby's, Buffalo Wild Wings and Jimmy John's and alleges as follows.

**NATURE OF ACTION**

1. This is an action for infringement of **United States Patent No. 8,799,083**, under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

**THE PARTIES**

2. Plaintiff ATL is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer Ave Suite 500, Cheyenne, Wyoming 82001. ATL is the assignee of all right, title, and interest in **U.S. Patent No. 8,799,083**.

3. On information and belief, Roark Capital is an Atlanta-based private equity fund located at 1180 Peachtree St NE, Suite 2500, Atlanta, GA 30309.

## **JURISDICTION**

4. The claims in this action arise under the Patent Laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over the patent infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to the Texas Long Arm Statute, due at least to its substantial business conducted in this forum, directly and/or through one or more of its subsidiaries, affiliates, franchisees, and/or agents, including (i) having solicited business in the State of Texas, transacted business within the State of Texas, and/or attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (iii) either alone or in conjunction with others, having committed acts of infringement within this District and/or induced others to commit acts of infringement within this District. Defendant has, directly and/or through a network of subsidiaries, affiliates, franchisees, and/or agents, purposefully and voluntarily placed infringing products and services in the stream of commerce knowing and expecting them to be purchased and used by consumers in Texas and in this District.

6. On information and belief, Defendant, directly and/or through one or more subsidiaries, affiliates, franchisees, and/or agents, has advertised and continues to advertise (including through websites), used, offered to sell, sold, distributed, and/or induced the sale and/or use of infringing products and services in the United States and in this District. Defendant has, directly and/or through a distribution network, purposefully and voluntarily placed such products and services in the stream of commerce via established channels knowing and expecting them to

be purchased and used by consumers in the United States and this District. Defendant has committed acts of direct infringement in Texas and/or committed indirect infringement based on acts of direct infringement by others in Texas and in this District, including Defendant's subsidiaries, affiliates, franchisees, and/or agents and Defendant's customer-users.

7. On information and belief, Defendant maintains a corporate presence in Texas and in this District directly and/or through its subsidiaries, affiliates, franchisees, and agents. On information and belief, Defendant, directly and/or through one or more subsidiaries, affiliates, franchisees, and/or agents, has regularly conducted and/or solicited business, engaged in other persistent courses of conduct, and/or derived substantial revenue from products and services provided to businesses and/or individuals in Texas and in this District.

8. On information and belief, Defendant and its subsidiaries, affiliates, and franchisees have operated as agents of one another and vicariously as parts of the same business group to work in concert together. On information and belief, Defendant's subsidiaries, affiliates, and franchisees, advertise, promote, use, offer to sell, distribute, and/or sell infringing products and services in the United States and this District at the direction and under the control of Defendant.

9. On information and belief, Defendant, directly or through its subsidiaries, affiliates, franchisees, and agents, owns, maintains, and/or operates restaurants throughout the United States, including in Texas and in this District, through which customer-users can access Defendant's products, and services.

10. On information and belief, Roark Capital through its investment funds controls and does business as Subway, Dunkin', Baskin-Robbins, Sonic, Arby's, Buffalo Wild Wings and Jimmy John's in this District.

Original Complaint                              3

11. On information and belief, Defendant, alone and through the activities of at least its subsidiaries, affiliates, franchisees, and agents, conducts business in the United States, including advertising, using, offering to sell, distributing, and selling infringing products and services in this District. Defendant, alone and through at least its subsidiaries, affiliates, franchisees, and agents, place such infringing products and services into the stream of commerce via established channels knowing or understanding that such services would be offered for sale, sold, and/or used in the United States, including in the State of Texas. The exercise of jurisdiction over Defendant would therefore not offend the traditional notions of fair play and substantial justice.

## VENUE

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(c)(2) and 1400(b) because Defendant has a regular and established place of business in this District through its multiple locations, including Subway, Dunkin', Baskin-Robbins, Sonic, Arby's, Buffalo Wild Wings and Jimmy John's in this District.

## THE PATENTS IN SUIT

13. On August 5, 2015, United States Letters Patent No. 8,799,083 ("the '083 patent"), entitled "SYSTEM AND METHOD FOR MANAGING RESTAURANT CUSTOMER DATA ELEMENTS," was duly and legally issued by the United States Patent & Trademark Office. A copy of the **U.S. Patent No. 8,799,083** is attached hereto as **Exhibit 1**.

14. The '083 Patent issued from U.S. Patent Application No. 13/534,195, which was filed on June 27, 2012. The inventor of the '083 Patent has assigned all of his rights, title, and interest in and to the '083 Patent to ATL.

15. ATL is the sole owner of all rights, title and interest in and to the '083 Patent and, at a minimum, of all substantial rights in the '083 Patent, including the exclusive right to enforce

the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '083 Patent.

## Overview of the Technology

16. The '083 Patent relates to restaurant customer service management systems and methods, particularly systems and methods for customers to order and pay for food items and/or beverages remotely using their mobile phone.

17. As described in the specification of the '083 Patent, at the time of the invention, the restaurant and hospitality industry was rapidly changing as a result of the change in demographics of the customer base and the introduction of technology. At that time, the traditional experience in which a customer partook when dining out was still the same model that had been employed for hundreds of years.

18. The newer generation of restaurant customers (and operators) at that time, however, were from Generation X—these customers were generally educated, highly competent with technology, considered time as a valuable commodity, often impatient, and enjoyed continuous and interactive entertainment.

19. In order to serve those customers and operators, new methodologies for managing the customer experience were required to meet the changing needs. The specification of the '083 Patent invention describes these new concepts, capabilities and methodologies for a customer-managed dining experience.

20. At that time, the restaurant industry was using a suite of disparate technologies to solve a variety of operator related issues. The concept and methodology described in the specification of the '083 Patent integrated many of these various technologies into a single

comprehensive solution combined with additional capabilities aimed at improving the customer experience, while putting a portion of the technology solution into the customer's hands.

## The Patented Invention

21. As described in the specification of the '083 Patent, the systems and methods of the present invention enable a customer-user to use their mobile phone to interact with the restaurant without the involvement of the restaurant's staff.

22. According to certain embodiments, when a customer-user accesses a restaurant's system with their mobile phone, for example though the restaurant's app or website, a current and up-to-date menu of food items and/or beverages based on the current time of day (*e.g.,* breakfast menu, lunch menu, dinner menu, late night menu, etc.) is uploaded to the customer-user's mobile phone.

23. If logged in and identified to the restaurant's system, the restaurant's system can draw upon past experience of the customer-user, or other information collected from the login process such as demographics, credit limits, etc., to intelligently present the menu and provide or highlight food and/or beverage selections that would be appealing to that particular customer-user. The system could potentially place the intelligent selections at the front of the menu, followed by the regular menu.

24. Once in the menu selection process, customer-users can put together an order on their own. The process for identifying and selecting individual food items and/or beverages can be similar to an internet shopping cart. The menu can include nested hyperlinks or other methods for drilling down for additional details to learn more about one or more particular food item(s), beverage(s), or combination(s) thereof. For example, a main menu might contain a section on hamburgers with a list of potential variations offered, each identified with by an individualized

name and/or picture and price. By selecting the name or picture, the device, the restaurant system would provide additional information on that item including, for example, a larger image with details on the ingredients.

25.    A customer-user can then choose to add the food item and/or beverage to their order or, alternatively, to return to the previous menu to continue searching for other food items and/or beverages. Additional options for customizing an order could also be provided to a customer-user, such as pull-down menus for having specific ingredients on the side rather than on the main item, substituting certain ingredients for others from a list of choices, and/or requesting additional amounts of one or more ingredients.

26.    If a customer-user chooses to order a food item and/or beverage, they can then be returned to the main menu to continue the process of selecting items, to add for example additional beverages or other food items. At any point during the ordering process, a customer-user can review their order, including the current sum of food item and/or beverage prices.

27.    Once a customer-user has completed the ordering process, they can confirm their order. Confirming an order causes the restaurant's system to upload a bill to the customer-user's mobile phone. The customer-user then performs a "Self-Checkout" process, in which they review their bill and submit pay therefor bill electronically, for example by entering a credit card number and certain authentication information into their mobile phone.

28.    Confirming an order also causes, for example a restaurant's system to initiate the process of preparing the specific food items and/or beverages that have been ordered. In the case of a restaurant with multiple locations, the restaurant's system may send the order to a specific location which has been selected by the customer-user.

### The Claims are Directed to Patentable Subject Matter

29.    The inventions claimed in the '083 Patent include a method involving receiving at

Original Complaint                                    7

least one request of at least one service related to a list of items or menu from a mobile phone; uploading, by a system of a restaurant, a bill for the at least one service to the mobile phone; and performing a self-checkout by a at least one customer whereby payment for the at least one service is submitted by the at least one customer via the mobile phone to the system, wherein the payment is submitted without interaction with staff associated with the restaurant.

### The claims are directed to a solving an existing problem with restaurant ordering systems

30. The inventions claimed in the '083 Patent are directed to a specific way of processing an order for food items and/or beverages without the involvement of the staff of the restaurant. This is a substantial improvement over prior restaurant ordering systems.

31. More specifically, as described in the specification of the '083 Patent, the claimed invention eliminates the need for restaurant staff to be involved in payment processing and/or collection, thereby reducing costs and increasing efficiency. That is, as described in the specification of the '083 Patent, the claimed invention enables a customer to purchase food items and/or beverages from a restaurant completely autonomously. This is a substantial improvement over prior restaurant ordering systems which required the involvement of one or more members of the restaurant's staff and therefore represents a significant potential cost-savings to the restaurant owner as well as reducing the possibility of errors in a customer's order and/or in payment processing.

### The claims are not directed to an abstract idea or law of nature

32. The claims of the '083 Patent are not directed to an abstract idea or law of nature.

33. Claim 1 of the '083 Patent is directed to method of processing an order for food items and/or beverages without the involvement of the staff of the restaurant. Processing an order food items and/or beverages is not a law of nature and the specific way in which the claimed method enables such processing, *i.e.*, by the customer submitting the payment for their order

Original Complaint                                                          8

through their mobile phone, and thereby paying for their order without the involvement of any restaurant staff, is not abstract.

### The claims do not preempt their field

34. The claims of the '083 Patent do not merely recite a generic way of processing an order for food items and/or beverages. Rather, the claimed inventions are directed to a specific way of ordering and paying for food items via a customer's mobile phone, thereby eliminating the need for restaurant staff to be involved in the processing of or collection of payment for an order for food items or beverages.

35. Alternative ways exist and are known for processing an order for food items and/or beverages. Prior to the inventions claimed in the '083 Patent, for example, restaurant staff members were responsible for processing and collecting payment for orders for food items and/or beverages. Even with respect to the more specific concept of remote payments for orders of food items and/or beverages, a POSITA knows and understands other ways in which this can be accomplished other than through the customer's mobile phone, for example, via a remote terminal.

### The claimed method could not be performed mentally or by hand

36. The very essence of the claimed method is that it does not require any involvement of the staff of the restaurant, *i.e.*, the customer can pay for their food items and/or beverages completely autonomously. A POSITA would know and understand that the claimed method could not possibly be performed mentally or by hand.

### **DEFENDANT'S SYSTEM AND SERVICES**

37. On information and belief, Defendant offers a mobile app through which customers can use their mobile phones to place and pay for orders for items and/or beverages.

39. On information and belief, the mobile app offered by Defendant provides a menu (or menus) from which a customer can select one of more items and/or beverages and then uploads a bill for those selected items and/or beverages to the customer's mobile phone, which the customer pays via his/her mobile phone.



*Figure 1* – **Exhibit 2** of the Complaint at page 2.

40. Despite not having a license to the Patents-in-Suit, Defendant offers a mobile app that incorporates the technology covered by the claims of the Patents-in-Suit.

### FIRST CAUSE OF ACTION
**(Direct Infringement of the '083 Patent)**

41. ATL hereby repeats and re-alleges the allegations contained in paragraphs 1 to 40 as if fully set forth herein.

42. The '083 Patent is presumed valid under 35 U.S.C. § 282.

43. ATL has complied with the requirements of 35 U.S.C. § 287 as have all prior owners of the '083 Patent.

44. The accused products and services are covered by one or more claims of the '083 Patent and therefore infringe the '083 Patent. Claim charts attached as **Exhibit 2** identify

Original Complaint                                 10

specifically how each element of at least claim 1 of the '083 Patent is practiced by the mobile app offered by Defendant.

45. Defendant's direct infringement of the '083 Patent has injured and continues to injure ATL and ATL is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

46. Despite Defendant's knowledge of the '083 Patent and its infringing activities, Defendant has continued to use, sell, and/or offer for sale products and services falling within the scope of one or more claims of the '083 Patent, without authority from ATL. Defendant has therefore acted recklessly and Defendant's direct infringement of the '083 Patent has been willful, egregious, deliberate and intentional, justifying an award to ATL of increased damages and attorneys' fees and costs.

47. Even after becoming aware of its direct infringement of the '083 Patent, on information and belief, Defendant has made no effort to alter its services or otherwise attempt to design around the claims of the '083 Patent in order to avoid infringement. These actions demonstrate Defendant's blatant and egregious disregard for ATL's patent rights.

48. As a result of Defendant's unlawful activities, ATL has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendant's continued direct infringement of the '083 Patent causes harm to ATL in the form of loss of goodwill, damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate ATL for these harms. Accordingly, ATL is entitled to preliminary and permanent injunctive relief.

**SECOND CAUSE OF ACTION**
**(Indirect Infringement of the '083 Patent)**

49. ATL hereby repeats and re-alleges the allegations contained in paragraphs 1 to 48 as if fully set forth herein.

50. Defendant's customer end-users directly infringe the claims of the '083 Patent, including at least claim 1 through their use of the mobile apps offered by Defendant in the United States. **Exhibit 2.**

51. Defendant indirectly infringes by inducing infringement of the claims of the '083 Patent by aiding and abetting consumer end-users to use Defendant's mobile app in its normal and customary way in the United States and in this District and by contributing to infringement of the claims of the '083 Patent by supplying a mobile app and providing instructions to consumer end-users for using that app in practicing the method claimed in the '083 Patent.

52. Defendant aids and abets consumer end-users in infringing the claims of the '083 Patent with the knowledge of, and the specific intent to cause, the acts of direct infringement performed by these consumer end-users. On information and belief, despite having knowledge of the '083 Patent, Defendant continues and will continue to provide and support the mobile app through which customer end-users directly infringe the '083 Patent.

53. Defendant's indirect infringement of the '083 Patent has injured and continues to injure ATL and ATL is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

54. Despite Defendant's knowledge of the '083 Patent and its infringing activities and the infringing activities of consumer end-users of Defendant's mobile app, Defendant has continued to provide and support products and services falling within the scope of one or more claims of the '083 Patent, without authority from ATL. Defendant has therefore acted recklessly

and Defendant's indirect infringement of the '083 Patent has been willful, egregious, deliberate and intentional, justifying an award to ATL of increased damages and attorneys' fees and costs.

55. Even after becoming aware of its indirect infringement of the '083 Patent, on information and belief, Defendant has made no effort to alter its services or otherwise attempt to design around the claims of the '083 Patent in order to avoid infringement. These actions demonstrate Defendant's blatant and egregious disregard for ATL's patent rights.

56. As a result of Defendant's unlawful activities, ATL has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendant's continued indirect infringement of the '083 Patent causes harm to ATL in the form of loss of goodwill, damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate ATL for these harms. Accordingly, ATL is entitled to preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

Wherefore, ATL respectfully prays this Court enter judgment in its favor on each and every Claim for Relief and award to ATL relief, including, but not limited to, the following:

A. Entry of judgment in favor of ATL, and against Defendant, on each and every Claim in this Complaint;

B. Entry of judgment in favor of ATL, and against Defendant, that Defendant has directly infringed the claims of the '083 Patent;

C. Entry of judgment in favor of ATL, and against Defendant, that Defendant has indirectly infringed the claims of the '083 Patent by inducing the infringement thereof and/or contributing to the infringement thereof;

D. Entry of judgment in favor of ATL, and against Defendant, that this case is an exceptional case and awarding ATL its reasonable attorney fees and costs pursuant to 35 U.S.C. § 285 and any other applicable statutes, laws, and/or rules;

E. Entry of preliminary and permanent injunctions against Defendant, and its officers, directors, principals, agents, sales representatives, servants, employees, successors, assigns, affiliates, divisions, subsidiaries, and all those acting in concert or participation with them, from directly infringing, inducing infringement and/or contributing to the infringement of any claim of the '083 Patent;

F. A determination that ATL is the prevailing party and therefore entitled to its taxable costs; and

G. Entry of judgment in favor of ATL, and against Defendant, awarding ATL such other relief the Court deems just, equitable, and proper.

## DEMAND FOR A JURY TRIAL

ATL requests a trial by jury, under Rule 38 of the Federal Rules of Civil Procedure, for all issues so triable.

DATED: May 1, 2024

Respectfully submitted,

*/s/ Randall Garteiser*
Randall T. Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street

Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**Counsel for Plaintiff**